### Blankenship et al. v. Chambliss.

Jan. 11, 1944.

Raymond B. Dycus for appellants.

Reed & Reed for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—
Reversing.

This appeal is from a judgment cancelling a deed executed by Mrs. Mary L. Chambliss to her daughter, Mrs. Cora Blankenship, on September 3, 1941. The judgment directed also that Mrs. Chambliss pay the sum of $110 to Mrs. Blankenship. The parties were directed to pay their own costs. Since we have arrived at the conclusion the judgment must be reversed, it is necessary for us to review briefly the facts and circumstances surrounding the deed in question.

In all probability this opinion will be of little, if any, value to the Bar and the Bench, and of interest only to the litigants and their attorneys, but we follow the practice of preparing and publishing a formal opinion in each case, save in instances where appeals are denied.

Mrs. Chambliss was 80 years of age when the deed was executed. She had been a widow for about 42 years. The only real property she owned was the tract covered by the conveyance which was on the Husbands Road, a short distance from Paducah. This property consisted of a four-room frame house and about four acres of land, and was valued at $1,000. Mrs. Chambliss also had about $300 in cash in a bank. From 1929 until June, 1941, she lived just outside the city limits of Paducah with a daughter and son-in-law, Mr. and Mrs. Earl Harris. The Harrises had no children. Mrs. Harris worked in the city most of the time and her mother kept house. Mrs. Chambliss left the Harris home in June after she and her daughter had engaged in some sort of argument. She moved into a one-room brick store building, just across the road from the Harrises. During the following August she and her other daughter, Mrs. Cora Blankenship, began discussing plans for her to make her home with the Blankenships, who lived on a farm some 15 miles from Paducah, in Livingston County. Their farm and livestock were worth some $11,000. They had a six-room frame house.

The discussions between Mrs. Blankenship and her mother dealt with the conveyance of the property in question to the former, upon condition that she provide a home for her mother. There is some indication that Mrs. Chambliss desired to live on the property on the Husbands Road. Mrs. Blankenship admitted there was some talk along that line. On September 3rd, the Blankenships and Mrs. Chambliss met at the Court House in Paducah and a deed was drawn up under which she conveyed her property on the Husbands Road to Mrs. Blankenship for $1 and other valuable consideration. Mrs. Chambliss admitted that Mr. Blankenship insisted the deed be drawn so the property could be sold. At the same time the deed was executed the Blankenships and their daughter, Helen, entered into a contract which provided: "That so long as Mary L. Chambliss lives she is to have a home with her daughter Cora Blankenship and her husband the said Alfred Blankenship; that should the said Cora Blankenship or her husband Alfred Blankenship die prior to her mother, then the said Helen Blankenship is to provide a home for the said Mary L. Chambliss as long as the said Mary L. Chambliss lives." Mrs. Chambliss said a writing was drawn up at the same time the deed was executed, but that it was not given to her until she returned home. The testimony of the Blankenships and the person who drew up the deed and the contract is to the effect that both the deed and the contract were discussed by all of the parties. A few days after the deed was executed Mrs. Chambliss went to the Blankenship home and stayed there until shortly before Christmas. She then returned to Paducah and stayed with Mrs. Harris until sometime in February, 1942. She went back to the Blankenship home and stayed until the following July. At that time Mrs. Blankenship went to Florida to visit a daughter who was ill. Before leaving she arranged for her mother to stay with a neighbor. About a week after Mrs. Blankenship left, Mrs. Chambliss became ill and the lady with whom she was staying wrote Mrs. Harris and told her of her mother's condition. Mrs. Harris visited her on the following week-end, and shortly thereafter she came back and took her mother to her home, where she was still residing at the time of this trial. The record contains correspondence between Mrs. Chambliss and Mrs. Blankenship as to a re-conveyance of the property.

It is apparent from this correspondence that Mrs. Chambliss had decided she would rather live with Mrs. Harris, and that she wanted the property back. Mrs. Blankenship's position seems to have been that she was willing to convey the property to Mrs. Harris, provided she was given a certain sum of money to reimburse her for the amount she had expended under the agreement between her and her mother. Ill feeling existed between Mrs. Harris and Mrs. Blankenship, and the latter insisted that Mrs. Harris tell her "face to face" that she would take care of her mother and not put her out, as she was said to have done before. Mrs. Blankenship's letters showed also that she was ready and willing for her mother to come back to her home and she said that was the only thing for her to do, if Mrs. Harris would not agree to keep her. Apparently, Mrs. Harris was unwilling to commit herself to her sister, so this litigation followed. In brief, it is the outgrowth of disputes among three high-tempered, hard-headed women, one of whom should probably be excused, to some extent at least, because of age.

Mrs. Chambliss insists the Blankenships breached their agreement with her by failing to provide her a home on the Husbands Road property. The Blankenships insist no such agreement was made. We think the evidence and the attending circumstances support overwhelmingly the position of the Blankenships. Mrs. Chambliss had not resided on the Husbands Road property for a number of years. As indicated, it was a small four-room house. It is inconceivable that the Blankenships, who had a better than average farm home and a good farm, would leave their place and go to the outskirts of Paducah and live in a four-room house on a four-acre tract of land. The contract which they entered into shows clearly they had no such intention and made no such agreement. Furthermore, the deed was silent on the question, and Mrs. Chambliss admitted Mr. Blankenship wanted it prepared so the property could be sold. This was done. As a matter of fact, Mrs. Chambliss did go to the home of the Blankenships a few days after the execution of the deed. Her belongings were moved there, and aside from the period she spent with Mrs. Harris at Christmas she lived there until July, 1942. It was through no fault of Mrs. Blankenship that her mother left. When it was necessary for Mrs. Blankenship to go to Florida she ar-

ranged with a neighbor to keep her mother. She provided her with a home and said she was willing for her to come back any time. That was all she was required to do. Elswick v. Elswick, 220 Ky. 723, 295 S. W. 1070.

Some question is raised as to whether the contract entered into by the Blankenships should have been admitted as evidence. Clearly, it was admissible. It was drawn up at the same time as the deed, and, obviously, for the express purpose of assuring Mrs. Chambliss that the agreement to provide a home for her upon condition she convey the property to Mrs. Blankenship would be carried out. It is pointed out that she did not sign it. It was not necessary for her to do so. It was made for her benefit, and it was placed in her hands for safe-keeping. As indicated at the outset, we can not escape the conclusion the chancellor erred in adjudging that the deed be cancelled. Probably, Mrs. Chambliss would prefer to live with Mrs. Harris during her remaining years, but that furnishes no basis for the cancellation of a valid deed. The evidence shows the Blankenships have been and are ready and willing to carry out their agreement. Furthermore, Mrs. Blankenship agreed to convey the property to Mrs. Harris if she would agree to give her mother a home. For reasons not divulged by the record, Mrs. Harris was unwilling to make any such commitment. It seems to us an aged woman's declining years could have been made more pleasant and comfortable through the application of a little common sense and a little sisterly love.

Judgment reversed, with directions to set it aside, and for the entry of a judgment in conformity with this opinion.